497 So.2d 763 (1986)
Janelle Marie DUPLECHIN, Plaintiff-Appellee,
v.
John Joseph TOCE, Defendant-Appellant.
No. 85-1243.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Writ Denied January 9, 1987.
*764 Daniel L. Landry, Lafayette, for defendant-appellant.
Glenn J. Armentor, Lafayette, for plaintiff-appellee.
Before GUIDRY, DOUCET and KING, JJ.
DOUCET, Judge.
This appeal arises from a personal injury action by a woman against her ex-husband for damages resulting from injuries inflicted during the marriage.
On August 16, 1980, an altercation occurred in the home of the parties which resulted in the hospitalization of the plaintiff for a period of 25 days.
The plaintiff first filed a petition for damages resulting from that incident on August 13, 1981. The defendant filed an Exception of No Right of Action to that suit, citing interspousal immunity as outlined in La.R.S. 9:291. The trial court granted that exception. On December 15, 1981, plaintiff was granted a divorce from the defendant. On January 5, 1982, plaintiff again filed a petition for damages resulting from the altercation of August 16, 1980. Defendant filed Exceptions of Prescription, Res Judicata, No Cause, and No Right of Action, each of which was overruled in turn.
*765 After a trial on the merits, a judgment was rendered in favor of the plaintiff and against the defendant in the amount of $12,000.00 for past and future medical expenses, and $40,000.00 in general damages, as well as for all costs of court.
The defendant's motion for new trial was denied. The defendant then filed this appeal from the trial court's ruling on the Exceptions of No Cause and No Right of Action, as well as from the judgment of the trial court on the merits.
EXCEPTIONS OF NO CAUSE AND/OR RIGHT OF ACTION
The defendant contends that the trial court erred in denying its Exceptions of No Cause or Right of Action. The defendant asserts that the provisions of La.R.S. 9:291 creates an Interspousal Immunity which prevents suit for causes of action arising during the marriage. La.R.S. 9:291 provides that:
Unless judicially separated, spouses may not sue each other except for causes of action arising out of a contract or the provisions of Title VI, Book III of the Civil Code restitution of separate property; for divorce, separation from bed and board, and causes of action pertaining to the custody of a child or alimony for his support while the spouses are living separate and apart, although not judicially separated.
It is well settled that the interspousal immunity created by this statute does not destroy any cause of action which one spouse might have against the other. The effect of this statute is to bar the right of action which one spouse has against the other for any such cause of action. The question presented here is whether the right of action is forever barred as to causes of action arising during the marriage or whether, on the other hand, this statute merely suspends the cause of action until such time as the spouses may be judicially separated or the marriage ends in divorce. This issue was addressed only once previously by the First Circuit in Gremillion v. Caffey, 71 So.2d 670 (La. App. 1st Cir.1954). In that case, the court cited La.C.C. art. 159 and stated that:
Under the express terms of the above cited article the judgment of absolute divorce between plaintiff and defendant rendered on February 10, 1953 removed the relative incapacity of the plaintiff to sue the defendant for the tort he committed on August 22, 1952 or, stated in another way, ended the abatement of her right of action which had existed during the continuation of the marriage, although she enjoyed a cause of action under Article 2315, LSA-C.C. By the judgment of divorce, plaintiff and defendant were placed "in the same situation with respect to each other as if no marriage had ever been contracted between them."
Suits between spouses have traditionally been prohibited on the theory that such suits disrupt domestic tranquility. However, once the marriage is ended, this would no longer seem to be a valid policy. Enforcement of Rights by Spouses, 25 La. L.Rev. 186 (1964); Family Law  The Bar to Interspousal Suit and the Maternal Preference Rule, 52 Tul.L.Rev. 422 (1978). Accordingly, we find that it is the time of the judicial proceedings which controls the application of the Doctrine of Interspousal Immunity rather than the time of the occurrence of the tort. Further, since prescription is suspended as between spouses during the marriage, the plaintiff has both a cause and a right of action against her former husband.

FACTUAL FINDINGS
The defendant further alleges that the trial court erred in not finding the plaintiff to be the aggressor in the altercation; in awarding excessive damages, and excessive medical expenses.
The trial judge rendered written reasons for judgment which we quote as follows:
"The Court has carefully weighed the testimony of the witnesses and observed the parties during the giving of the testimony and finds, to this point, that the *766 testimony of Mrs. Toce has the most veracity.
It is apparent that Mr. Toce pulled Mrs. Toce onto the bed, wrapped the telephone cord around her arms, beat her on the face with his fist, proceeded to strike her on the head with the telephone, bit her on the ear and shoulder. The struggle continued and they fell to the floor where the beating continued. Mrs. Toce, being tied with the telephone cord or a nylon cord was completely immobilized.
The beating caused Mrs. Toce to have wounds which bled. Mr. Toce poured alcohol on her to remove the blood. He told her he was going to kill her and no one would know that he had beaten her again would drag her to the pool, put a strap around her neck, and finish her in the pool. He would then hide her body and tell everyone she had returned to Arkansas.
ISSUES PRESENTED
(1) Is John Joseph Toce guilty of a battery upon Janelle Marie Duplechin?
(2) Was Janelle Marie Duplechin guilty of such provocation so as to excuse the battery by John Joseph Toce?

DISCUSSION
The evidence shows that Mr. Toce had a history of wife beating. Andrea Mouton, who was married to Mr. Toce in 1975, testified that approximately two (2) months after their marriage Mr. Toce twisted her arm, she moaned, he hit her because she could not take playing around. On another occasion she was awakened by his beating upon her. Mr. Toce testified he had struck her one (1) time when she threw a tantrum.
Janelle Marie Duplechin testified that two (2) weeks after their marriage, Mr. Toce struck her because she didn't listen to him as to his instructions on the use of the dishwasher. On another occasion while in Arkansas on a Thanksgiving visit to one of Mr. Toce's cousins, Mr. Toce struck her on the face numerous times outside of the cousin's mobile home. Later, in the mobile home, he struck her again, embarked in his vehicle returning to Lafayette leaving Mrs. Toce stranded in Arkansas. Subsequently, there was a third altercation with Mr. Toce wherein he tied her with a cord while she was in bed, struck her about the head. Mrs. Toce separated after this beating and finally returned to live with Mr. Toce around August 1, 1980.
Mr. Toce alleges that the actions of Mrs. Toce provoked him to such a degree that the ensuing battery was justified.
It is correctly stated in Alexander v. McCray, (La.App.), 190 So.2d 463 that "the law is well settled in actions for damages for battery that a plaintiff cannot recover damages for such battery if the evidence establishes that he is at fault in provoking the difficulty in which the injury complained of is received". Tripoli v. Gurry, 218 So.2d 563 at 564. It is equally well settled that even where there is an aggressive act, justifying a battery, the person retaliating may use only so much force as is necessary to repel the aggression; and that if he goes beyond this, he uses force in excess of what would have been reasonably necessary, he is liable for damages for injury caused by the employment of such unnecessary force. Tripoli v. Gurry, supra at 564 (citations omitted).
Mr. Toce, in testifying and in his answer to the petition stated that Mrs. Toce took the physical possession of his wheelchair away from him. She then, while fighting for the telephone, pulled him out of bed and onto the floor of their bedroom causing the altercation and argument complained of by Mrs. Toce. He stated that the altercation lasted only ten (10) to thirty (30) seconds.
The Court finds that Mr. Toce, contrary to his testimony, is not a weak person wherein his upper body strength is concerned. His position that Mrs. Toce pulled him out of the bed is hardly feasible. It is not realistic to think that Mrs. Toce would attempt to manhandle a 140 pound man who had three (3) times beaten her. Nor is it reasonable to think that she could have pulled him off of their water bed onto the *767 floor. If such was done, it would surely have come from strength gained from fear.
Mr. Toce testified that he is unable to crawl yet he testified that in other instances he was able to get to his wheelchair from relatively long distances. His alleged trauma over the physical control over his wheelchair was not sufficient reason to impose the beating he gave to Mrs. Toce. Further, the Court does not belive [sic] that Mrs. Toce did, in fact, take the wheelchair from him.
After a painstaking review of all the evidence and testimony, it is the holding of the Court that John Joseph Toce is guilty of a grossly unjustified battery upon Janelle Marie Duplechin.

INJURIES SUSTAINED
Mrs. Toce suffered the following as a result of the battery: a three (3") inch laceration of her scalp, two (2) black eyes, a broken nose, contusions about the ears and neck, contusions of the right thigh, post-traumatic vertigo and an injury to her left ear involving a perforation of the left tympanic membrane with an associated conductive hearing loss.
Mrs. Toce suffered psychiatric problems, some of which exist at the present time. Dr. William Cloyd, a psychiatrist who treated her, found her to be depressed because of traumatic or depressive neurosis; and she was suffering from an emotional illness. He treated her with anti-depressants and recommended psychiatric hospitalization since he found her to be moderately to seriously depressed. Mrs. Toce admitted herself to the Acadiana Mental Health Clinic where she remained as an inpatient from approximately 12/18/80 to 12/24/80. She was an outpatient through January, 1981.
Dr. Denbo Montgomery, an ear specialist, testified that Mrs. Toce has a high tone loss in her left ear which cannot be corrected without surgery and that her nose is currently deviated to the left.

DAMAGES
The Court finds that the sum of TWELVE THOUSAND AND NO/100 ($12,000.00) DOLLARS will be an ample amount to compensate plaintiff for past and future medical bills, said future medical bills to include ear surgery and psychiatric care.
In Reck v. Stevens, 373 So.2d 498, 5050 (1979), Justice Tate cites with approval the case of Squyres v. Phillips, 385 So.2d 337, 339 (La.App. 3d Cir., 1979), in denoting the factors to be considered in awarding damages in battery cases:
A general review of the jurisprudence indicates that our Courts balance many factors in assessing damages in assault and battery cases. These include, besides physical pain and suffering, the factors of provocation, reasonableness of force used, attendant humiliating circumstances, sex of victim, mental distress, etc. There is no rule or standard of law fixing or establishing the amount of recovery and each case consequently must rest on its own set of facts.
Considering all the factors involved in this case, the Court finds that plaintiff should be awarded FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS for damages sustained by her.
The Court orders expert witness fees of THREE HUNDRED FIFTY AND NO/100 ($350.00) DOLLARS to Dr. William Cloyd and FOUR HUNDRED AND NO/100 ($400.00) DOLLARS each to Drs. Edward LeBlanc and Denbo Montgomery, said fees to be cast as costs of these proceedings."
The trial court has great discretion with regard to factual findings, and those findings should not be disturbed absent an abuse of that discretion. We find that a reasonable basis exists for the Judge's determination of fault and for the damages awarded. Canter v. Koehring, 283 So.2d 716 (La.1973).

DISPOSITION OF FEES
Finally, defendant asserts that the trial judge erred in awarding in its written *768 judgment fees for depositions not outlined in his reasons for judgment. Where discrepancies exist between reasons for judgment and the judgment rendered by the court, the judgment controls. Hebert v. Hebert, 351 So.2d 1199 (La.1977). Barker v. Tangi Exterminating Co., 448 So.2d 690 (La.App. 1st Cir.1984) writ denied, 452 So.2d 171 (La.1984).
For the above and foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendant.
AFFIRMED.